Fairchild *v.* California Stage Company.

There being no motion for new trial, this Court will not review the testimony. (*Ingraham* v. *Gildermester,* 2 Cal. R. 483.) Nor will it interfere with a verdict on conflicting testimony.

----

## FAIRCHILD *v.* THE CALIFORNIA STAGE COMPANY.

| 13 | 599 |
| 80 | 585 |
| 80 | 587 |

IN suits against common carriers, damages for pain of mind are recoverable.

Proprietors of stage coaches are not insurers or warrantors of the safety of *passengers,* to the same extent with common carriers of *goods.*

But they are liable for the slightest neglect. They are held to extraordinary diligence and care. And, in case of injury, the presumption, *prima facie,* is, that it occurred by the negligence of the coachman. The *onus probandi* is on the proprietors to show no negligence, and, that the injury was occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent.

It is not error for a Court to refuse an instruction asked, stating an abstract or general proposition of law, when it has already so charged the jury as to embrace such proposition, or so much of it as is applicable to the case.

If the ends of justice require, it is both the right and the duty of the Court to permit a witness to be recalled, after a party has closed his case.

APPEAL from the Tenth District.

In addition to the instructions set forth in the opinion, the others referred to are as follows:

*Second Instruction.*—" That if the jury believe that a want of proper skill or care of the driver, placed the passengers in a state of peril, and they had at that time a reasonable ground for supposing that the stage would upset, or that the driver was incapable of managing his horses, the plaintiff is entitled to recover, although the jury may believe, from the position in which the stage was placed by the negligence and recklessness of the driver, that the movement of a portion of the passengers may have increased the peril, and even caused the stage to upset. In such a case the fault is first with the driver, and the defendants are liable."

*Seventh Instruction.* — " If the jury find that the defendants were carriers of passengers, then the law requires that they should employ drivers having competent skill, well acquainted with the road they undertake to drive over, and they must provide them with steady horses, a coach, and harness, of sufficient strength and properly made, and the coach must be properly loaded. If there is the least failure in any of those things the duty of the coach proprietors is not fulfilled, and they are responsible for any injury or damage that happens on the account thereof."

On the trial, the defendant asked the following " instruction," which was refused:

" That if the jury believe from the evidence, the driver of defendant's stage coach used all due and necessary diligence, and that the upsetting of the stage-coach was the result of accident or misfortune, then they should find for the defendants." .

*Reardan & Smith,* for Appellant, to the point that carriers of passengers are responsible only for want of due care and skill, cited : *Burke* v. *C. & O. R. R.* 13 Wend. 626 ; *Boyce* v. *Audum,* 2 Pet. 156; *Maury* v. *Talmy,* 2 McLean, 161, 162; 9 Met. 13— 15; 21 Conn. 253; 2 Greenl. Ev. Sec. 253 and note, and Sec. 267, and note; 21 Wend. 618; 2 Kent, 769.

*Mesick & Swezy,* for Respondent, cited : Angell on Com. Carriers, Secs. 568, 569; Edwards on Bailment, 585, 586; Story on Bailment, 594; 22 Conn. 298; 2 McLane, 166; 1 Id. 552; 13 Pet. 185.

The admission of new evidence, if any was offered after close by defendant, was matter of discretion in the District Court. (6 Barb. 132.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

This action was brought to recover damages for certain injuries sustained by the plaintiff by the careless overturning of a stage-coach in which she was a passenger. A verdict was rendered for the plaintiff for two thousand two hundred and fifty dollars damages. A motion for a new trial was made and overruled.

The main questions arise on certain instructions given and refused. It is not deemed necessary to notice at large the points —that the evidence did not warrant the verdict, and that the damages are excessive. We have read the body of proofs in the case, and think that they make a proper subject of inquiry for a jury, whose verdict either way we would not disturb. Nor, if the injury to the plaintiff be anything like as great as some of the medical witnesses suppose, is there any pretense for the interposition of this Court, on the ground of a gross mistake, or palpable abuse of discretion of the jury in assessing damages.

We proceed to consider the instructions : "It is objected that the second instruction asked by the plaintiff should not have been given, because it assumes the fact of the recklessness of the driver," etc. But this is a misapprehension on the part of the counsel. We understand the charge to be hypothetical.

2. The third instruction is objected to, but it seems that instruction was refused.

3. The fourth instruction is objected to, because it asserts that the plaintiff, if entitled to recover, may recover damages for "mental anguish." We cannot see why compensation should not as well be given for pain of mind as pain of body.

4. The seventh instruction is objected to, because it assumes deficiencies which did not exist. We think there is nothing in the objection.

It is next objected that the Court erred in not giving the first and fifth instruction asked by the defendant.

The first is in these words : " That the proprietors of a stage-coach do not warrant the safety of passengers in the character of common carriers."

This was refused. It is evident that this refusal was not based upon the denial of the proposition asserted, for the Court had already, in a variety of forms, given clear indications of a different opinion, and afterward, in several distinct instructions, gave, in effect, and in clearer and more concrete form, the proposition asked, to the jury.

The converse of the principle embodied in the instruction cannot be maintained. It is true that proprietors of stage-coaches are common carriers, and that common carriers are insurers or warrantors (with two or three exceptions) of the goods they undertake to carry ; but the difference in the character of the subjects of the conveyance, between men and things, creates this difference in the rule applying to them respectively. Mr. Story's work on Bailment, (Art. 9, Sec. 590,) discusses this whole subject with his usual learning and ability. He says : " Having considered the rights, duties, and obligations, of carriers of goods for hire, we may now pass to the consideration of those of carriers of passengers. It has been already stated that carriers of passengers merely for hire, are subject to the same responsibility as carriers of goods for hire, at the common law, so far as respects the baggage of the passengers. But, as to the persons of the passengers, a different rule prevails. Attempts have been made to extend their responsibility as to the persons of passengers, to all losses and injuries, except those arising from the act of God, or from the public enemies. But the support of this doctrine has been uniformly resisted by the Courts, although a strict responsibility as to the carriage of the persons of passengers is imposed upon such carriers."

Speaking further of the responsibility and duties of this class of carriers, he says, Section 592 : " In the next place, they are bound to provide coaches reasonably strong and sufficient for the journey, with suitable harness, trappings, and equipments, and to make a proper examination thereof previous to each journey. In other terms, they are bound to provide road-worthy vehicles, suitable for the safe transportation of the passengers. If they fail in any of these particulars, and any damage or in-

jury occurs to the passengers, they will be responsible to the full extent thereof. Hence, it has been held, that if there is any defect in the original construction of a stage-coach, as for example, in an axletree, although the defect be out of sight, and not discernable upon a mere ordinary examination, yet, if the defect might be discovered by a more minute examination, and any damage is occasioned thereby, the coach proprietors are answerable therefor. The same rule will apply to any other latent defect, which might be discovered by more minute examination and more exact diligence, whereby the work is not road-worthy, and a damage thereby occurs to any passenger. In this respect there does not seem to be any difference between the case of a coach which is not road-worthy, and of a ship which is not seaworthy, as to the implied obligations of the owner.

SEC. 593. In the next place, they are bound to provide careful drivers, of reasonable skill and good habits, for the journey, and to employ horses which are steady, and not vicious, or likely to endanger the safety of the passengers. In the pithy language of an eminent Judge, it may be said that, ' The coachman must, have competent skill, he must be well acquainted with the road he undertakes to drive, he must be provided with steady horses, a coach and harness of sufficient strength and properly made, and also lights by night. If there is the least failure in any of these things, the duty of the coach proprietors is not fulfilled, and they are responsible for any injury or damage that happens.'

SEC. 594. In the next place, they are bound not to overload the coach, either with passengers or luggage, and they are to take care that the weight is suitably adjusted, so that the coach is not top-heavy, and made liable to overset."

Many cases are cited by the author in support of these propositions—but it is unnecessary to cite them, as it is believed the authorities are uniform to this leading doctrine, unless the case of *Boyce* v. *Anderson*, (2 Peters, 150,) be an exception; and if it be, it is, in effect, overruled by the later case of *Stokes* v. *Saltonstall*, (13 Id. 181.)

In *Farish & Co.* v. *Reigle*, (11 Grattan Va. R. 711,) the question was directly raised, whether a stage-coach proprietor was responsible for more than ordinary diligence. But the Court, Mr. Justice Daniel delivering the opinion, unanimously held that

he was. The Court approve of the doctrines of Mr. Justice Story quoted herein. We extract from the opinion, as it states the law as we understand it fully and distinctly.

"The liabilities of such carriers naturally flow from their duties. As they are not, like common carriers of goods, insurers against all injuries, except by the act of God, or by public enemies, the inquiry is naturally presented—what is the nature and extent of their responsibility? It is certain that their undertaking is not an undertaking absolutely to convey safely. But although they do not warrant the safety of the passengers, at all events, yet their undertaking and liability go to the extent that they and their agents possess competent skill, and that they will use all due care and diligence in the performance of their duty. But in what manner, (the author asks,) are we to measure this due care and diligence? Is it ordinary care and diligence, which will make them liable only for ordinary neglect? Or is it extraordinary care and diligence, which will render them liable for slight neglect? As they undertake for the carriage of human beings, whose lives, and limbs, and health, are of great importance, as well to the public as to themselves, the ordinary principle in criminal cases, where persons are made liable for personal wrongs and injuries arising from slight neglect, would seem, (he says,) to furnish the true analogy and rule. It has been accordingly held that passenger-carriers bind themselves to carry safely those whom they [admit] into their coaches, as far as human care and foresight will go, that is, for the utmost care and diligence of very cautious persons; and of course they are responsible for any, even the slightest, neglect." (Section 601.)

In Sec. 601 a—the further proposition is stated, that "when injury or damage happens to the passengers, by the breaking down or overturning of the coach, or by any other accident occurring on the ground, the presumption *prima facie* is, that it occurred by the negligence of the coachman; and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatsoever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent; for the law will, in tenderness to human life and limb, hold the proprietors

Fairchild *v.* California Stage Company.

liable for the slightest negligence, and will compel them to repel, by satisfactory proofs, every imputation thereof."

Notwithstanding what we have said, we do not feel disposed to reverse this judgment because of the refusal of the Judge below to give this instruction. The Court had already given full and explicit instructions to the jury, placing the law of the case before them, in accordance with the views we have taken of it. The effect of these instructions was clearly to ignore the idea that the defendant was responsible according to the stringent rules governing the contracts of common carriers for the conveyance of goods. The jury, after the responsibility of the defendant was placed on different and nearly contrary grounds, could scarcely have required the instruction asked in order to understand that the defendant was not bound as insurer of the safety of the passengers. But not laying too much stress on this, we think that the charge itself is too indefinite, and was calculated to mislead the jury. While it is true that the proprietors of a stage-coach do not warrant the safety of passengers in the same sense that they warrant the safe carriage of goods, yet they do warrant that safety so far as to covenant for the exercise of extraordinary diligence and care to insure it; and they do this as common carriers. The proposition asked was merely abstract, and the Court fully and more explicitly gave the same charge in the second, third, and fourth, instructions, asked by defendant. We do not understand that a Judge is bound to repeat over and over again a proposition of law already announced in different forms; especially is it not bound to give an abstract proposition, or even a general proposition, when it has already charged, or at the time gives distinctly the law upon the particular facts, and when its charges necessarily embrace the general proposition, or all of it at all applicable to the case before the jury.

The same observations are applicable to the fifth instruction refused.

There is no merit in the last point taken, that the Court permitted a witness to be recalled after the plaintiff had closed his case. This was a matter of discretion, and it was not only the right, but, if the ends of justice required it, the duty of the Court to recall him.

Judgment affirmed.