[L. A. No. 1638.   In Bank.—April 2, 1907.]

## CLARENCE KLINE, Respondent, v. SANTA BARBARA CONSOLIDATED RAILWAY COMPANY, Appellant.

NEGLIGENCE—STREET RAILROAD—LIABILITY FOR INJURY TO PASSENGER—
UTMOST CARE AND DILIGENCE—INSTRUCTIONS.—In an action by a passenger on a street railroad to recover damages for personal injuries alleged to have been caused by the negligence of the carrier, it is proper to instruct the jury that "contributory negligence on the part of a passenger cannot be presumed from the mere fact of

injury, but must be proved; on the other hand, the proof of an injury to a passenger on the car of a common carrier casts upon the common carrier the burden of proving that the injury was occasioned by inevitable casualty, or some other cause which human care and foresight could not prevent, or by contributory negligence of the plaintiff, unless the proof on the part of the plaintiff tends to show that the injury was occasioned by the contributory negligence of the passenger or by inevitable casualty, or by some other cause which human care and foresilght could not prevent.'' Such instruction is the equivalent of the rule of law enacted in section 2100 of the Civil Code, which requires of the carrier of passengers the use of the "utmost care and diligence.''

ID.—MEASURE OF DAMAGES—LOSS OF TIME.—In such an action, where it appears that the passenger injured was a woman of sixty-five years of age, engaged in no gainful occupation, but capable, before the accident, of taking care of herself and accustomed to active outdoor exercise, and that the effect of the accident was to make her permanently lame, and to render her to some extent unable to care for herself, and under the necessity of hiring the services of others, it is proper to charge the jury, as one of the elements of damage, that the plaintiff was entitled to recover the value of her time while she would necessarily be disabled as the result of the injury.

ID.—EVIDENCE—INSUFFICIENT ALLEGATION, OF DAMAGE.—The admission of evidence in support of such element of damage, even if the complaint was insufficient in that connection, could not have operated as a surprise to the defendant and was a harmless error, when it appears that the plaintiff had submitted before the trial to a phys-- ical examination by surgeons selected by the defendant for the purpose of ascertaining what her injuries were, and whether they had been properly treated.

ID.—OPINION OF WITNESS—SPEED OF CAR.—The refusal of the court to strike out the opinion of a witness that the car on which the plaintiff was riding was moving at an "unpardonable high rate of speed'' was without prejudice, if the conceded facts were that the car had escaped all control and descended the grade at a dangerous rate of speed, which the combined efforts of motorman and conductor were insufficient to arrest or moderate.

ID.—SUFFERING OF PLAINTIFF—NON-EXPERT WITNESS.—In such action, where the injury occasioned to the plaintiff, in addition to superficial bruises, consisted of a fracture of the neck of the femur, nonexpert witnesses, who had observed her during her illness, and had heard her groans and complaints, were competent to give an opinion as to her suffering.

ID.—HYPOTHETICAL QUESTION SUBSEQUENTLY ANSWERED IN SUBSTANCE. —The refusal of the court to permit an expert witness called by the defendant to answer a hypothetical question asked for the purpose of showing that the medical treatment received by the plaintiff had aggravated her injury, is harmless, if the witness, in answer to ques-

tions subsequently asked, was permitted to fully express his opinion as to the nature of the injury; the error in treating it, and the injurious results of the treatment.

APPEAL from a judgment of the Superior Court of Santa Barbara County. Felix W. Ewing, Judge presiding.

The facts are stated in the opinion of the court.

H. H. Trowbridge, Henley C. Booth, and P. F. Dunne, *Amicus Curiæ*, for Appellant.

W. S. Day, and John J. Squier, for Respondent.

BEATTY, C. J.—On July 26, 1903, the defendant, a street-railway corporation engaged in operating electric cars in the city of Santa Barbara, received the plaintiff, a woman sixty-five years of age, as a passenger in one of its cars at the terminus of the line, immediately in front of the old Franciscan Mission in said city. When the plaintiff boarded the car she seated herself on one of the rear outside seats, which was long enough to seat three persons comfortably, and' which ran parallel with the axis of the car. Immediately in front of her was a standard carrying a hand-rail, and extending from the side steps of the car to the roof.

After the car had been under way a few yards it gained speed despite the fact that the motorman and conductor applied the brakes, which were of the hand-lever pattern, and when the car—the speed having become greatly accelerated—reached a curve nine hundred and seventy-four feet from the mission, the lurch of the car in rounding the curve threw the plaintiff from her seat to the ground, causing the injuries for which this action was brought. The action was defended upon two grounds: 1. That the loss of control of the car was due to the fact that the county of Santa Barbara shortly before the date of the accident, in applying crude oil to the roadway, had left a puddle of oil at the extreme end of the track, which had become covered with dust; that the car on which plaintiff became a passenger, being an excursion car, was run out to the end of the track to avoid interruption to the regular cars, and that thereby, without the knowledge of defendant, its officers or the car crew, its

wheels and brake-blocks had become saturated with oil, and useless as a means of controlling the car on the down grade from the mission to the curve; and 2. That the plaintiff was warned of the situation in time to have secured herself from any danger of being thrown off the car, by simply grasping the standard-post in front of her, and that having neglected this precaution she was guilty of contributory negligence.

In mitigation of damages the defendant offered to prove that the injuries resulting from the accident would have been much less serious if the plaintiff had been properly treated by the surgeon employed by her.

The case was tried by jury and a verdict returned in favor of plaintiff for eight thousand dollars. Defendant appeals from the judgment. The record here includes a bill of exceptions embodying the evidence, and the exceptions taken at the trial to the rulings of the court upon objections to evidence, and in giving and refusing requests to charge.

The cause was originally transferred for hearing to the district court of appeal, where the judgment of the superior court was affirmed. Upon petition of appellant it was ordered to a rehearing in this court, principally for the purpose of giving further consideration to the questions raised as to the correctness of two instructions given to the jury by the trial judge and approved by the district court of appeal. Besides these questions, counsel for appellant insisted at the rehearing, as thy did in their petition, upon further consideration of some of their assignments of error not expressly dealt with in the opinion of the district court of appeal.

The most important of these questions in its bearing upon this case, and upon other cases likely to arise in which it will be invoked as a precedent, relates to the degree of care required to be exercised by common carriers of passengers, and the duty imposed upon such carriers in the exercise of that care.

In submitting the case to the jury the judge of the superior court gave, among others, the following instruction: "Contributory negligence on the part of a passenger cannot be presumed from the mere fact of injury, but must be proved. On the other hand, the proof of an injury to a passenger on the car of a common carrier casts upon the common carrier the burden of proving that the injury was occasioned by

inevitable casualty, or some other cause which human care and foresight could not prevent, or by contributory negligence of the plaintiff, unless the proof on the part of the plaintiff tends to show that the injury was occasioned by the contributory negligence of the passenger or by inevitable casualty, or by some other cause which human care and foresight could not prevent.''

The objection to this instruction is directed to the words *"occasioned by inevitable casualty or some other cause which human foresight could not prevent."*

This is construed by counsel as requiring a degree of care which would be the utmost that the human mind is capable of imagining, and such they contend is not the law. But whatever the instruction may be held to mean, it cannot be denied that this court in a number of instances has approved it as a correct statement of the law, so that either counsel are mistaken in their construction or the rule of law is as stringent as their construction makes it. As long ago as 1859, in deciding the case of *Fairchild* v. *California Stage Co.*, 13 Cal. 604, Justice Baldwin, delivering the opinion of the court, quoted with entire approval the unanimous decision of the Virginia court of appeals that ''passenger carriers bind themselves to carry safely those whom they admit into their coaches, *as far as human care and foresight will go, that is, for the utmost care and diligence of very cautious persons, and of course they are responsible for any, even the slightest, neglect,''* citing Story on Bailments, sections 601, 601a, where that author uses this language: ''And the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatsoever, and that the damage or injury has been occasioned by inevitable casualty *or by some cause which human care and foresight could not prevent."*

This decision has since been approved and followed in several other similar cases, and as to the point under consideration remains unquestioned. In substance the rule there affirmed has been made statute law in section 2100 of the Civil Code, which requires of the carrier of passengers the use of the ''utmost care and diligence.'' And this, as appears from the passage quoted from the Virginia case (*Farish* v. *Reigle*, 11 Gratt. 711, [62 Am. Dec. 666]), and approved by

this court, is construed to mean all the care which human foresight will suggest. In another case which was decided before the adoption of the Civil Code this court cited section 601 of Story on Bailments as authority for the rule that "carriers of passengers bind themselves to carry safely those whom they take into their coaches or cars as far as human care and foresight will go—that is, for the utmost care and diligence of very cautious persons." (*Wheaton* v. *North Beach etc. R. R. Co.,* 36 Cal. 593.) And in that case, the court, after stating the rule, proceeded to explain it as follows: "Whether in case of injury they have exercised such care and diligence is to be determined in view of the facts and circumstances which existed prior to the accident, and they cannot be held not to have done so because, after the accident, it may appear that it could have been avoided by precaution which a very cautious person, not knowing that the accident was about to occur, would not have taken. *But this form of expressing the rule is not more clear than the bare statement that the carrier must exercise the utmost care, diligence and foresight of a very cautious person.*" These extracts from the opinions of this court in a stage-coach case and a street-railway case, decided before the adoption of our Civil Code, show that the language of instruction 7 given in this case had not only been approved as a correct statement of the rule of law, but had been explained and construed as the equivalent, and no more than the equivalent, of the rule enacted in section 2100 of that code. It cannot be error, therefore, for a trial court, in submitting a case of this kind to the jury, to state the rule in its approved form, and if counsel have reason to fear that the jury may understand the rule so expressed, as requiring more than the utmost caution of very cautious persons, in view of the circumstances known or imputed to the knowledge of the carrier before the accident, they have the right to propose an instruction embodying the proper qualification. Other cases decided since the adoption of the code rule are in perfect accord with those previously decided. (See *Jamison* v. *S. J. and S. Co.,* 55 Cal. 593.) In *Treadwell* v. *Whittier,* 80 Cal. 574, [13 Am. St. Rep. 175, 22 Pac. 266], there is a very full review of the authorities on this point, citing not only Story on Bailments, but Cooley on Torts, and a large number of decisions of courts

in other jurisdictions, all supporting the rule in terms or substance, as it was given in this case. It was approved in terms in *Mitchell* v. *Southern Pacific R. R. Co.*, 87 Cal. 64, 75, [25 Pac. 245], and in the very recent case of *Boone* v. *Oakland Traction Co.*, 139 Cal. 490, 494, [73 Pac. 243]. Counsel contends that what was said in the two cases last cited was *dictum*, because the judgments against the carriers were reversed on other grounds. But it was not *dictum*; the point was involved in each case, and was certain to arise on the new trial which was ordered. It was therefore a point to be decided, and, being decided, became in each instance the law of the case.

Instructions couched in terms similar to those in question may have been disapproved in other jurisdictions, but here the form in which the rule was stated has been so often approved, and the means of preventing its misconstruction or misapplication are so entirely within the power of the defense in actions for damages, that this court could not with any consistency or justice set aside its previous rulings in this class of cases. The propriety of this conclusion could not be more clearly illustrated than it is by the fact that in this case counsel for the defendant asked, and the court gave, the following instruction to the jury: "5. You are instructed that while a street-railway company does not insure the absolute safety of its passengers, it is the duty of the street-railway company, and was the duty of the defendant in this case, to do all that human care, vigilance and foresight could, under the circumstances, considering the character and mode of conveyance, to prevent accident to passengers; and you are instructed that if the injury to the plaintiff was caused solely by the brakes not working and the reason of the brakes not working was oil on the track, and that the defendant did not know that such oil was on the track at the time of the accident and should not have known in the exercise of such care, vigilance and foresight, then the injury to the plaintiff was caused by a mere accident for which the defendant is not responsible and your verdict should be for the defendant." From which it appears that so far from questioning the rule at the trial, counsel for the defendant requested the court to give it in the very words complained of, with an explanation which freed it completely from the construction which they say renders it erroneous.

The following is the eighth instruction given to the jury at the request of the plaintiff:—

"8. If the plaintiff is entitled to recover, the measure of her recovery is what is denominated compensatory damages—that is, such sum as will compensate her for any injury she has sustained.

"The elements entering into such damages are the following:—

"(1) Such sum as will compensate her for the expenses, if any, she has incurred in caring for and nursing herself during any period she was disabled by the injury, not exceeding the sum of $497;

"(2) The value of her time while she will necessarily be disabled as the result of the injury; and

"(3) Such reasonable sum as the jury shall award her on account of any pain and anxiety she may have suffered, or will necessarily suffer, by reason of her injury. The first of these elements is the subject of direct proof, and is to be determined by the jury on the evidence they have before them; but the second and third elements are from necessity left to the sound discretion of the jury, however the damages in all cannot exceed the amounts alleged in the complaint."

It is contended that the second clause of this instruction contains an erroneous and misleading statement of the law, and that it must have led the jury to render what appellant views as a verdict excessive in amount. The evidence to be considered in determining the propriety of this instruction was to the effect that the plaintiff was a woman, sixty-five years of age, engaged in no gainful occupation, but capable before the accident of taking care of herself, and accustomed to active outdoor exercise. She lived with her married daughters, part of the time in Santa Barbara with one, and at other times in Alameda with another. The effect of the injuries sustained at the time of the accident was to make her permanently lame, and to render her to some extent unable to care for herself,—a disability continuing up to the time of the trial, and, according to the testimony of her surgeon, likely to be permanent. This would probably impose upon her the necessity of hiring the services of some one to do for her what she could no longer do, for herself, and this was an element of damage which she had a right to ask the

jury to consider.  The value of a person's time is the equivalent of his power to earn money in a gainful occupation, when he is so engaged, and ordinarily means nothing more. But it is not doing violence to language to say that the ability of a person to care for himself, and the practice of doing so instead of hiring the services of others, gives a value to his time, even if he is earning nothing, and, if so, the deprivation of such ability by the wrongful act of another imposes upon the wrong-doer the obligation to compensate him for the value of the time he can no longer employ in his own service.  Construed in this light, the instruction was not erroneous, though it might have been more clearly expressed.  The decision in *Storrs* v. *Los Angeles Traction Co.,* 134 Cal. 91, [66 Pac. 72], is not authority for or against the point here decided.  The instruction sustained in that case was different from that here in question, but it does not follow that this instruction is therefore wrong.

Whether this element of damage was sufficiently pleaded, in view of the special demurrer of defendant, may admit of doubt.  But if so, the error in admitting evidence as to the extent and permanence of the injuries sustained by plaintiff cannot have operated as a surprise to the defendant, for it appears that she had submitted before the trial to a physical examination by surgeons selected by the defendant for the purpose of ascertaining what her injuries were, and whether they had been properly treated.  The error, if any, was therefore harmless.

The court did err in refusing to strike out the opinion of the witness Lutgen that the car was moving at "an unpardonable high rate of speed," but this error could have had no prejudicial effect in view of the conceded fact that the car escaped all control and descended the grade at a dangerous rate of speed, which the combined efforts of motorman and conductor were insufficient to arrest or moderate.

Numerous exceptions were taken by defendant to the admission of evidence, and refusals to strike out evidence, of the suffering endured by the plaintiff in consequence of her injuries.  A bystander testified that immediately after the accident she was unable to stand and suffered intensely.  Her daughter testified that when she was brought home she was unable to walk and was suffering intensely, and that she con-

tinued for days to suffer, could not be moved, etc. A trained nurse in charge of the case testified to the same thing, and the attending surgeon testified that her sufferings were severe. The objections to this line of testimony are that non-expert witnesses were allowed to give their opinions as to her inability to stand and walk and as to her suffering, and that it was error to permit them to testify to anything beyond her acts and exclamations indicative of present pain. The witness who testified she could not stand was one of those who assisted in lifting her from the ground and placing her on the car after the accident; her daughter saw her carried by four men from the car to her house. The trained nurse and the surgeon had nursed and attended her during the progress of her partial recovery. All of the evidence on the part of the defendant, as well as that of the plaintiff, was to the effect that the injury to plaintiff consisted, in addition to superficial bruises, of a fracture of the neck of the femur. In view of this undisputed evidence as to the nature of the principal injury to plaintiff, the evidence that she could not stand or walk after the accident must have been harmless, for a court ought to take judicial notice of the fact that a woman with a broken thigh-bone will scarcely be able to walk or stand alone. As to the suffering, that also would necessarily follow from such an injury. But the evidence was not incompetent. It does not require an expert to tell whether a person suffers. The appearance of a person who suffers severely is sufficient to manifest his condition to any one of ordinary intelligence and experience. These witnesses had all observed her, had heard her groans and complaints, and were competent to give an opinion as to her suffering.

There was a conflict of evidence as to whether plaintiff sustained an impacted or unimpacted fracture of the neck of the femur. The surgeon who attended her testified that it was impacted, and it appeared that he had treated her according to that diagnosis. The surgeons who examined her for defendant testified that the fracture was unimpacted, and for the purpose of showing that the treatment she had received aggravated her injury, one of these surgeons was asked two hypothetical questions, to each of which the court sustained objections. These objections, in my opinion, should

have been overruled, but here again the error was harmless, for by a mere change in the form of his questions the defendant's counsel brought out fully the opinion of the witness as to the nature of the injury, the error in treating it, and the injurious results of the treatment.

Appellant, not claiming that plaintiff's instruction number 7, above quoted, is erroneous in any particular, except that which has been already considered, makes the point that instructions were given at its request which conflict with number 7 in other material particulars. If this was so, it would not be a reason for setting aside the verdict; but there is no conflict. Defendant's instructions merely stated, rather too favorably to it, certain qualifications of the rule announced in number 7.

We have here considered all the points to which our attention has been directed in the petition for a rehearing, and do not deem it necessary to notice particularly other points made prior to the hearing in the district court of appeal. We think the record presents no material error, and the judgment is therefore affirmed.

McFarland, J., Lorigan, J., Shaw, J., Sloss, J., and Henshaw, J., concurred.