[Civ. No. 8115. First Appellate District, Division Two.—February 8, 1932.]

SOPHIE K. LEONARD et al., Respondents, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

B. P. Gibbs and Libby & Sherwin for Appellant.

John J. Brennan, E. L. Davin and William J. Collard for Respondents.

BURROUGHS, J., *pro tem.*—This is an action for personal injuries alleged to have been suffered by the plaintiff Sophie K. Leonard while a passenger upon a stage-coach owned by the defendant Pickwick Stages System, a corporation. The cause was tried by the court sitting without a jury and judgment was rendered in favor of the plaintiff Sophie K. Leonard in the sum of $2,500. The judgment further provided that the plaintiff Samuel Leonard take nothing by the action. The defendant has appealed from the judgment.

In support of its appeal, the appellant insists that the evidence is wholly insufficient to justify the findings of the trial court. The evidence discloses that on December 3, 1923, the plaintiff Sophie K. Leonard was a passenger for hire traveling from El Centro to San Diego, California, upon a motor stage owned and operated by the defendant. Mrs. Leonard testified that she paid her stage fare; that when the stage left El Centro the weather was cloudy but about an half hour after leaving El Centro it began to rain and it rained off and on during the rest of the trip; that just before the accident and at the time of the accident it was raining very hard; that the last stop made before the accident was at a Pickwick station where they had something to eat; that from this station to the place of the accident it was pouring rain; that they had been traveling downgrade on a detour and when they reached good road they went a little faster; they were traveling about forty miles an hour; that "something gave way under the machine, clicked, and the machine began to skid, and then it turned over. The wheels were on top even with the road''; that the top of the stage was in a ditch off the paved highway. She also testified that the windshield had no wiper and the driver kept wiping the windshield inside

and out with a rag. He did this all the way from El Centro as it needed it; that she could see the curve in the road where the accident occurred and as they turned the corner the stage began to get away and rolled over; that previously they had been on a very bad detour and there was a little dirt and mud on the wheels, on the tires; that about ten miles back from the place of the accident the stage had a collision, as it went around a sharp curve, with a truck that was bringing another double truck up the hill. The driver of the stage had to do something and he bumped the stage into the side of the hill; that then he got out and tried to see what was the matter and then he drove very slowly until he got to a house on a hill and there he got out and worked with the right front wheel and the front part of the machine; that farther on he got out and again examined this wheel. Another witness was called by the plaintiff concerning the nature of her injuries but as no question is raised as to the amount of damage awarded, it is unnecessary to set forth this testimony. The plaintiff thereupon rested.

Maud E. Kemp, a witness for the defendant, testified that she was a passenger on the stage-coach at the time of the accident; that she boarded the stage at Jacumba about fifty miles from the scene of the accident; that it rained nearly all the time; that there was a detour from the main highway that they were traveling and they were going very slowly; that it was between five and ten miles after getting back on the paved highway to where the accident occurred; that the stage was going faster on this last stretch of road but when the accident occurred it was going slower; that when they rounded the curve, "The stage just kind of slid sideways off the highway over the bank"; the accident happened at the main part of the curve; that as they approached the curve the stage was going about twenty or thirty miles an hour but was slowing down; that there was a little knoll that hid the pavement beyond; that the road was very slippery, especially before they got on the pavement; that they had gotten over the worst of the road when the accident happened. This witness also testified concerning the stage going into a bank on the side of the road while they were on the detour to avoid a collision and that the driver examined the right front wheel of the stage.

Thomas R. Spence, the driver of the stage, testified that he had been driving stages for nine years; that he started on regular runs to El Centro and San Diego August 7, 1928; that on December 3, 1928, he left El Centro about 8 A. M.; that it was ninety-one miles from El Centro to the place of the accident and the accident occurred about 12 o'clock noon; that it was raining part of the way; that the detour was about eight miles long and it required forty-five minutes to go through it although ordinarily it took twenty-five minutes; that it was about two miles after they left the detour to the place where the accident happened; that while they were making the detour a touring car, or something like that, was holding pretty close to the center of the road and to avoid hitting it, he, the witness, had to swing pretty close to the side of the road and the bumper hit the bank; that when they arrived at Baron Long's ranch house, he stopped and inspected the bumper to see if it was bent back so it would interfere with the steering-gear turning the wheels; that he kicked it to make sure it was far enough away from the wheel and he found that it was; that he used no tools and was there about five minutes; that there was nothing wrong with the steering-gear. This witness further testified that he was traveling about twenty miles an hour as he approached the curve where the accident occurred but proceeded to slow down gradually with the brakes; that he had been slowing down for a quarter of a mile; that the stage was equipped with four forward speeds and he was in the fourth until he came to the curve and when the stage began to slip he went into the third speed; that to put the car in third speed the stage must be traveling at thirty miles or less an hour; that as the stage reached the middle of the curve, it went into silt that had washed down over the pavement from the bank along the side of the road; that the silt was about one-quarter of an inch thick and was like so much grease; that after getting into this silt the car turned around and struck a sign-post and then turned around again, thus making a complete turn; that as it made the turn after hitting the sign-post, the rear right wheel dropped over the edge of the bank into the ditch, putting the front end over and causing it to roll over on its top; that it was about a distance of fifty feet from the place where the car started to skid until it went into the

ditch; that in dry weather a speed around this curve at twenty-five miles to thirty miles an hour is a safe speed; that he knew the embankment was there and that silt does wash down from an embankment in rainy weather; that he was about ten feet from the silt when he first saw it; that he had never driven over that road in winter.

It is insisted by the appellant that in presenting her case the respondent relied upon the doctrine of *res ipsa loquitur*. That by its evidence the appellant overthrew the presumption of negligence thus raised and, the respondent having failed to offer additional evidence, the court should have entered judgment for the appellant. As against this theory, the respondent claims that although the doctrine of *res ipsa loquitur* was applicable to her case, she did not rely solely thereon; that her own evidence is direct proof of the driver's negligence; that the evidence of the witnesses for the appellant also establishes that fact. The case, therefore, presents for decision a question of the preponderance of the evidence.

The rules of law applicable to this class of case are, we believe set forth in *Scarborough* v. *Urgo*, 191 Cal. 341 [216 Pac. 584, 586], as follows: "The rule is that carriers of passengers for reward bind themselves to carry safely those whom they undertake to convey or carry as far as human care and foresight will go; that is, with the utmost care and diligence of very cautious persons, and, of course, they are responsible for any, even the slightest negligence. (*Kline* v. *Santa Barbara Ry. Co.*, 150 Cal. 741 [90 Pac. 125].) In this class of cases a *prima facie* case of negligence is made out by proving that the passenger was injured while being carried as such, and this being done, the carrier is called upon to rebut or overcome a presumption of negligence that follows from the mere fact of injury, by showing, if it can, the exercise of that degree of care which will excuse it under the rule of law above stated. Such a presumption is evidence in the case, but it has no greater or different effect than the testimony of witnesses, and in no degree changes the rule as to the burden of proof, viz., the burden of producing a preponderance of evidence. . . . When all the evidence is in the question for the jury is whether the preponderance is with the plaintiff."

It is also a well established rule of law that a finding of the court or the verdict of a jury based upon conflicting evidence may not be disturbed by reviewing courts.

The evidence set forth in the foregoing epitome establishes clearly that the plaintiff Sophie K. Leonard was at the time of the accident a passenger on one of the stagecoaches of the defendant Pickwick Stages System, a corporation, which was engaged in the business of transporting passengers for hire, and that plaintiff had paid to the defendant the regular passenger fare for the entire trip. It rained most of the distance and was raining very hard at the time of the accident. The roadbed was very slippery. The rate of speed, according to the plaintiff, was about forty miles an hour; Mrs. Kemp placed it at twenty to thirty miles per hour just before the accident; and the driver testified that just before the accident he was traveling twenty miles an hour. The last two witnesses said that the rate of speed was lessening as they came to the curve. The driver further testified that on the curve he considered that in dry weather twenty-five to thirty miles per hour was a safe speed. He also said a little hill obstructed the view, but that he saw the silt about ten feet before he drove into it.

We are of the opinion that the foregoing epitome of the evidence establishes that the plaintiff went beyond the requirements of the rule of *res ipsa loquitur* and produced evidence which, if believed by the court, was sufficient to find the defendant guilty of neligence which was the proximate cause of plaintiff's injuries. In addition to such evidence, that presented by the defendant was also available to the plaintiff. The court had a right to conclude that had the stage been driven at a slower speed the driver would have been able to have controlled the car when it went into the bed of silt; and to consider the fact that it was raining very hard, that the roadbed was very slippery, that the stage was on a curve and slight grade, that a small hill shut off the view of the road and that the driver estimated a safe rate of speed in dry weather to be twenty-five or thirty miles an hour at this place. The court may have believed that an unreasonable rate of speed (even the lowest shown by the evidence) precipitated the stage into the silt, and rendered it unmanageable and was the direct cause of the accident. Just what view the court took of the evidence

we do not know, but in any event there is a substantial conflict and there is sufficient evidence to sustain the court's finding of negligence on the part of the appellant's agent.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.