[Civ. No. 19082. Second Dist., Div. Two. Nov. 26, 1952.]

HELEN LORENE HOPKINS, a Minor, etc., Respondent, v. YELLOW CAB COMPANY (a Corporation) et al., Appellants.

Joseph A. Ball for Appellants.

Russell H. Pray and William C. Price for Respondent.

MOORE, P. J.—Appeal from a judgment on a single question of law: did defendants in transporting plaintiff and other school children in a taxicab, commonly used as a common carrier, owe plaintiff the duty of exercising the highest degree of care for her safety or merely ordinary care?

The Long Beach Unified School District had in attendance at its schools a number of physically and mentally handicapped children. It contracted with the Yellow Cab Company of Long Beach to furnish an automobile and driver for the transportation of such children from their homes to school in the mornings, to their homes and return at noon, and back to their homes in the afternoon. The automobile under contract was licensed by the Public Utilities Commission of California as a taxicab. Its driver, defendant Sanders, entered upon his duties daily at 7:30 a.m. and left at 5:30 p.m. During such hours he was engaged in the public carriage of passengers as a common carrier under a franchise from the city. But while conveying the school children back and forth between 8 and 9 a.m. and 12 noon and 4 p.m. the automobile and driver were subject to the orders of the unified school district pursuant to a written contract for the cab company to provide six yellow cabs for such service to the school district. By the contract, such cabs were supplied with drivers who were "required to assist children from their homes or school to the taxicabs and from the taxicabs to the inside of the school or to their homes . . . and to follow the shortest and safest route to or from the schools unless authorized otherwise"; also, during the periods of conveying such children no other passenger "shall be transported at the same time" a school child is in the conveyance. The cab company and its drivers were required to comply in all respects with the pertinent statutes and city ordinances and the latest regulations of the State Department of Education. The contract for the service of the taxicab and drivers was made pursuant to section 16251 of the Education Code.[1]

---

[1]"The governing board of any school district may provide, with the written approval of the county superintendent of schools, for the transportation of pupils to and from school whenever in the judgment of the board such transportation is advisable and good reasons exist therefor. The governing board may purchase or rent and provide for the upkeep, care, and operation of vehicles, or may contract

While Sanders was in such taxicab on his way with a number of children from the Clara Barton School to their respective homes, the door opened and respondent was precipitated from the cab to the street. This fall caused Helen serious injuries for which the jury awarded her damages. The sufficiency of the evidence is not attacked. No error is assigned other than the *instruction* that the driver of the automobile in which Helen was riding "was required to use the utmost care and diligence for the safety of said passenger . . . At the time of the accident . . . Yellow Cab Company . . . was a common carrier operating a taxicab . . . was required by law to use the utmost care and diligence for the safe carriage of plaintiff, to provide everything necessary for that purpose and to exercise a reasonable degree of skill . . . The care required of it, however, was the highest that reasonably could have been exercised consistently with the mode of transportation used . . . This requirement must be measured in the light of the best precautions that were in common practical use in the same business and proved to be most efficacious . . . Ordinarily it is necessary to exercise greater caution for the protection and safety of a young child than for an adult . . . One dealing with children must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with children."

Appellants complain that not only were such instructions given at the time of submitting the case to the jury, but that during the course of deliberations the same instructions were re-read to the jury when they re-entered the courtroom and asked for "the instructions *only* relating to whether or not the safety requirement as applied to this case was adequate."

Inasmuch as the parties stipulated that the responsibility of the district and the cab company as principals was the same as that of the driver, the consideration of the criticized instruction will apply to all appellants alike.

 While the school board might have believed that it could contract with the cab company to exert the highest degree of care in transporting the children, respondent has supplied no authority to support her contention that the facts of this case deserve to be adjudged by a rule different from that

and pay for the transportation of pupils to and from school by common carrier, or may contract with and pay responsible private parties for transportation."

which has been continuously set forth in the appellate decisions, to wit: a school district is liable for only ordinary care in the transportation of its pupils to and from its schools and their homes. (*Foster* v. *Einer,* 69 Cal.App.2d 341, 347 [158 P.2d 978]; *Shannon* v. *Central-Gaither Union School Dist.,* 133 Cal.App. 124, 128 [23 P.2d 769].) The Shannon opinion declares that "a bus which is operated only for the convenience of a particular school under the circumstances of this case is a mere private carrier as distinguished from a common carrier, and that ordinary prudence for the safety of children under similar circumstances is all that is required of the district or the driver of the bus," citing *Gornstein* v. *Priver,* 64 Cal.App. 249 [221 P. 396]; *Klein* v. *Baker,* 112 Cal.App. 157 [296 P. 631], and 4 Cal.Jur. 815, § 2; Civ. Code, § 2096; *State ex rel. Public Util. Com.* v. *Nelson,* 65 Utah 457 [238 P. 237, 42 A.L.R. 849]; note in 42 A.L.R. p. 855. The cited note declares that "one who operates a bus or stage in accordance with the terms of a contract, for the benefit of a particular class, and not for the benefit of the public generally, is not a common carrier." The Shannon decision holds also that since a "school bus is operated for the sole convenience of the pupils of a particular school and there is no legal obligation for it to carry passengers generally or even to carry the pupils of other schools, it may not be deemed to be a common carrier of passengers, and the highest degree of care and diligence in its operation is therefore not required." The cited decisions are based upon facts which, of course, differ from those here involved but not sufficiently to justify instituting a different rule as to the degree of care. The Gornstein case is no better. It involves the right of a passenger who was riding on a chartered truck on its way to a Sunday picnic. The truck was not available to the general public on that Sunday and was therefore a private carrier.

In conference it was suggested that because the taxicab was a common carrier on the streets and highways of the state it may have retained its character on entering the service of the school district. Such theory is encouraged by the language of section 16251, *supra,* which authorizes the school board to contract for transportation of pupils by common carrier. However, the current status of the law seems clearly to be that when a common carrier contracts to render a special service for a group of individuals or a public agency it thereupon becomes a private carrier. Such is the law as declared in a host of authorities from the United States Supreme Court

and from many federal and state courts. In *Bank of Kentucky v. Adams Express Co.*, 93 U.S. 174, 186 [23 L.Ed. 872], it was held that a contract may be made which will put a common carrier on the same level with a private carrier for hire. In *Santa Fe, Prescott & Phoenix Ry. Co. v. Grant Bros. Const. Co.*, 228 U.S. 177, 185 [33 S.Ct. 474, 57 L.Ed. 787], it was held that whereas a common carrier cannot secure immunity from liability for its negligence by contract, such rule is not applicable when the common carrier is "acting outside the performance of its duty as a common carrier." In such event, it deals with "matters involving ordinary considerations of contractual relation," and is acting as "merely a private carrier in respect to the plaintiff, [and owes] him merely the duty of ordinary care."

■ In the situation at bar, the Yellow Cab Company's motor cars were customarily and daily cruising the streets for patronage or awaiting calls of the public. It was a common carrier in transporting such patrons. But when it agreed to act as carrier of handicapped school children under agreement for its operators to escort the pupils to and from their schools and homes to the cab and to render such service exclusively for them at designated hours, the company ceased to be a common carrier while transporting the specified children during such hours. (See 42 A.L.R. 849, 855.)

■ While section 16251 is comprehensive, it makes no provision for establishing the highest degree of care as the standard to be observed by a common carrier when it engages to render such service as that promised by the Yellow Cab Company. Neither does the contract so provide. The standard must, therefore, continue to be ordinary care.

The contention is made that if Yellow Cab Company be held to have been a private carrier while in the service of the school district, it will not be possible for any such district ever to effect the transportation of pupils by a common carrier as provided by the cited section. The answer to such argument is that the statute empowers the governing board to provide such transportation by supplying the pupils with fares to ride such conveyances as are available to the general public as common carriers.

The judgment is reversed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied December 15, 1952.