[No. C009837. Third Dist. Feb. 18, 1992.]

PATRICIA ANN WEBSTER, Plaintiff and Appellant, v.
H. R. EBRIGHT, Defendant and Respondent.

**COUNSEL**

Simpson & Gigounas and Edward B. Simpson for Plaintiff and Appellant.

Long & Levit, Russell Roeca and Linda S. Votaw for Defendant and Respondent.

**OPINION**

**SPARKS, J.**—Civil Code section 2100 provides that "A carrier of persons for reward must use the utmost care and diligence for their safe carriage,

must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." The question on appeal is whether the heightened standard of care under this statute applies to all carriers for reward or only to common carriers for reward. Because Civil Code section 2100 codified the common law governing common carriers, we conclude that this statute applies only to carriers of persons for reward who are common carriers and not to private carriers of persons for reward.

Plaintiff Patricia Ann Webster appeals from the judgment entered for defendant H. R. Ebright on the jury verdict in his favor, and from the denial of her motion for judgment notwithstanding the verdict. The locus of her appellate arguments is her theory that there exists a heightened standard of care for all "carriers for reward" under Civil Code section 2100 regardless of whether a defendant is a common carrier. Given the common law lineage of the statute, we find plaintiff's theory to be untenable and shall therefore affirm.

In light of plaintiff's contention and our resolution of it, little if any of the facts adduced at trial are relevant to this opinion. It is sufficient to note the defendant, operating under the name of Cascade Stables, had been in the business of recreational horseback rides since 1935. The defendant provided horses and guides for rides along various trails. The plaintiff rented a horse from defendant and was injured in her frightened attempts to dismount swiftly from her horse when it caught its foot on a root and attempted to extricate itself.

## DISCUSSION

The jury expressly found in a special verdict that the defendant was not a common carrier.[1] The plaintiff does not challenge this resolution of that issue. ▮▮▮ Instead, she urges that everyone who is a private carrier for reward is subject to the duty of utmost care under section 2100. Thus, she argues it was error for the court to refuse her request to instruct that the duties of a carrier for reward are the same as for a common carrier, to refuse her requested instruction that assumption of the risk doctrines are inapplicable to carriers for reward (as they are with common carriers), and to deny her motion for judgment notwithstanding the verdict (brought on the ground the special verdict finding the defendant was not a carrier for reward was not supported by the evidence). She also objects in passing to the form of verdict.

---

[1] Civil Code section 2168 provides, "Everyone who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry."

All further undesignated statutory references are to the Civil Code.

It behooves us to define our terms at the outset. "[C]arriage is a contract for the conveyance of property, persons, or messages, from one place to another." (§ 2085.) ■ A common carrier under section 2168 is one who offers to the general public to carry goods or persons, and is bound to accept anyone who tenders the price of carriage. (*Samuelson* v. *Public Utilities Com.* (1951) 36 Cal.2d 722, 729 [227 P.2d 256].) A private carrier, on the other hand, is bound only to accept carriage pursuant to special agreement. "All persons who undertake for hire . . . belong to one or the other of these classes. . . . Private carriers are such as carry for hire and do not come within the definition of a common carrier." (*Id.* at p. 730 [internal quotation marks omitted].) These carriers are further subdivided into carriers without reward (gratuitous carriers) and carriers for reward, with different duties of care specified depending on whether the carriage is of persons or property.[2]

While the plaintiff's confusion might be understandable in light of the fact "California court opinions frequently use 'common carrier' as the equivalent of 'carrier for reward'" (Cal. Tort Guide (Cont.Ed.Bar 1979) p. 82),[3] it is settled that being a carrier for reward does not itself impose the "utmost care" standard of common carriers. "Although the language of section 2100 seems broad enough to apply to both common and private carriers of passengers for reward, the courts have in practice applied the duty of utmost care to common carriers only and not to private carriers." (2 Levy, Cal. Torts (1991 ed.) Carriers, § 23.02[1], p. 23-12.)

■ This practice stems from the fact that section 2100, promulgated in the original code of 1872, codified the common law duty of common carriers of passengers, not private carriers. At common law, a "common or public carrier is one who undertakes as a business, for hire or reward, to carry from one place to another the goods of all persons who may apply for such carriage, provided the goods be of the kind which he professes to carry, and

---

[2] A gratuitous carrier is subject to the same rules as apply to gratuitous employees except where specified otherwise in the provisions relating to carriage. (§ 2089.) While a gratuitous employee is bound to use only slight care and diligence (Lab. Code, § 2850) and in general may relinquish the employment at any time (Lab. Code, §§ 2850, 2851), the gratuitous carrier cannot relinquish carriage without restoring the person or thing carried to a position as favorable as before carriage commenced (§ 2090), and with respect to a carriage of persons, must exercise ordinary care and diligence (§ 2096). The "slight care" standard, however, does apply to carriage of property. (§ 2114.) By contrast, a carrier for reward (as noted at the outset) is subject to the "utmost care" standard in carrying persons (§ 2100), as well as other duties (§§ 2101-2104), but only "ordinary care" in carrying property (§ 2114).

As neither carriage of property nor gratuitous carriage is involved in this case, we will usually use the shorthand phrase "common carrier" or "private carrier" without adding each time that the carriage is "for reward" or "of passengers."

[3] Indeed, this treatise states, incorrectly in our view, that "It is not clear whether a purely private carrier that contracts to carry for a reward can be held to the standard of utmost care . . . applicable to common carriers for reward." (*Ibid.*)

the person so applying will agree to have them carried upon the lawful terms prescribed by the carrier; and who, if he refuses to carry such goods for those who are willing to comply with his terms, becomes liable to an action by the aggrieved party for such refusal." (1 Hutchinson, Law of Carriers (3d. ed. 1906) § 47, p. 41.) In contrast, private carriers for hire were those who "make no public profession that they will carry for all who apply, but who occasionally or upon the particular occasion undertake for compensation to carry the goods of others upon such terms as may be agreed upon." (*Id.*, § 35, p. 28.) The measure of duty of the common carrier is "to exercise for the safety of his passengers while upon his conveyance the highest or utmost degree of care and diligence which human prudence and foresight will suggest in view of the character and mode of conveyance employed" (2 Hutchinson, Law of Carriers, supra, § 895, p. 996), while that of the private carrier for hire " is what is known as ordinary diligence, and for the lack of this, he will be held liable." (1 Hutchinson, *op. cit. supra*, § 37, p. 29.) Given this distinction between the two carriers, "[i]t is not therefore correct to assimilate this duty [of the common carrier] to that to which the private carrier for hire is bound, or to make the degree of care, which the law requires of the one, the standard by which to measure that which will be demanded of the other." (2 Hutchinson, *op. cit. supra*, § 896, p. 999.)

This common law distinction has been codified in section 2100. In *Kline* v. *Santa Barbara etc. Ry. Co.* (1907) 150 Cal. 741 [90 P. 125], the high court considered "the degree of care required to be exercised by *common* carriers of passengers, and the duty imposed upon such carriers in the exercise of that care." (*Id.* at p. 744 [italics added].) The *Kline* court noted that as early as 1859, in *Fairchild* v. *The California Stage Company* (1859) 13 Cal. 599, 604, the high court followed the common law rule that passenger carriers owe a duty of "the utmost care and diligence of very cautious persons . . . ." (150 Cal. at p. 745 [italics deleted].) "This decision," the *Kline* court went on, "has since been approved and followed in several other similar cases, and as to the point under consideration remains unquestioned. In substance the rule there affirmed has been made statute law in section 2100 of the Civil Code, which requires of the carrier of passengers the use of the 'utmost care and diligence.' " (*Ibid.*)

This implicit distinction between common carriers on the one hand and private carriers on the other was made explicit some 70 years ago. "Defendant, it is true, is not a common carrier of passengers, and his liability, therefore, is not that of a common carrier. He was, however, on this occasion a private carrier for hire. [Citation.] While a private carrier for hire is not bound to exercise the highest degree of care for the safety of his passengers,

as in the case of a common carrier, he is bound to exercise ordinary care and diligence to carry his passengers safely." (*Gornstein* v. *Priver* (1923) 64 Cal.App. 249, 254 [221 P. 396] [citations omitted].)[4] Thus, "[a]s a private carrier for hire, defendant was liable for injuries to his passengers proximately caused by his own or his servant's ordinary negligence." (*Id.* at p. 255.) Two other decisions, less explicit than *Gornstein* but citing it in support, also reaffirm that a private carrier is not held to the higher standard of a common carrier even though the private carriers in the two cases were obviously carriers for reward. In *Hopkins* v. *Yellow Cab Co.* (1952) 114 Cal.App.2d 394 [250 P.2d 330], a taxicab company contracted with a school district to provide exclusive transportation for handicapped students during specified hours on a regular basis. The issue was whether the taxicab company, ordinarily used as a common carrier, owed plaintiff the duty of exercising the highest degree of care for her safety or merely ordinary care in these circumstances. The *Hopkins* court noted that "the current status of the law seems clearly to be that when a common carrier contracts to render a special service for a group of individuals or a public agency it thereupon becomes a private carrier." (*Id.* at p. 397.) "The standard must, therefore, continue to be ordinary care." (*Id.* at p. 398.)

The same analysis was earlier applied in *Shannon* v. *Central-Gaither U. School Dist.* (1933) 133 Cal.App. 124 [23 P.2d 769]. There plaintiff, a 10-year-old student, was struck by a car while he was crossing the highway from the school bus to his home. He sued the school district and prevailed. On appeal, the reviewing court upheld the verdict on grounds of ordinary negligence after rejecting the common carrier standard of the highest degree of care. "We are of the opinion that a bus which is operated only for the convenience of a particular school under the circumstances of this case is a mere private carrier as distinguished from a common carrier, and that ordinary prudence for the safety of children under similar circumstances is all that is required of the district or the driver of the bus." (*Id.* at p. 128.) As the *Shannon* court explained, "Since a school bus is operated for the sole convenience of the pupils of a particular school and there is no legal obligation for it to carry passengers generally or even to carry the pupils of other schools, it may not be deemed to be a common carrier of passengers and the highest degree of care and diligence in its operation is therefore not required." (*Id.* at p. 129.) And as stated in passing by our Supreme Court, "the law applicable to common carriers is peculiarly rigorous, and it ought not to be extended to persons who have not expressly assumed that character, or by their conduct and from the nature of their business justified the

---

[4]The defendant was an operator of "motor-trucks" who generally transported freight and on weekends hired out the trucks to carry passengers to and from picnic grounds. The accident occurred on the trip back from a picnic ground. (*Id.* at p. 252.)

belief on the part of the public that they intended to assume it." (*Samuelson, supra,* 36 Cal.2d at p. 730 [internal quotation marks deleted].)

What is odd about this consistent line of decisional authority is that, with the exception of the *Kline* decision, it relies exclusively upon the common law and does not even deign to mention section 2100. This oddity may perhaps be explained by the then-prevailing view that the 1872 Civil Code "must be treated as merely a supplement to the common-law system, altering its rules only to the extent that the intent to do so clearly appeared." (Harrison, *The First Half-Century of the California Civil Code* (1922) 10 Cal.L.Rev. 185, 189.) This view was espoused by Professor John Norton Pomeroy in a series of articles published in the third and fourth volumes of the West Coast Reporter. In his view, the courts should "regard the code as primarily and mainly a declaration and enactment of common law rules. They might interpret every provision as intended to be a mere statement of the common law doctrines unchanged, with all its consequences, unless from the unequivocal language of the provision, a clear and certain intent appeared to alter the common law rule. They might construe all new, hitherto unused, and ambiguous phraseology, as not designed to work a change in the pre-existing settled rules, unless the intent to work such a change was clear and unmistakable. This, I submit, is the general principle of interpretation which the courts should adopt and apply without any deviation to the civil code." (4 West Coast Rptr. (1884) at p. 52.)[5]

"The California courts did in the main accept Pomeroy's approach to the code." (tenBroek, *California's Dual System of Family Law: Its Origin, Development, and Present Status,* Part II (1964) 16 Stan.L.Rev. 900, 913, fn. omitted.) Indeed, this canon of interpretation was adopted by this court in *Siminoff* v. *Jas. H. Goodman & Co. Bank* (1912) 18 Cal.App. 5 [121 P. 939]. There we quoted with approval Professor Pomeroy's view that " 'the Civil Code, as a matter of fact, was not designed to make any general alterations in the established doctrines and rules of the common law . . . [and] does not embody the whole law concerning private and civil relations, rights and duties; it is incomplete, imperfect and partial.' " (*Id.* at p. 11.) In light of this view that the original Civil Code was simply a cryptic restatement of some of the rules of the common law, it is not surprising that the courts turned to the common law and not to section 2100 to resolve the question of the standard of care for carriers for reward.

▆▆▆ As defendant notes, plaintiff "cites no authority holding that a carrier which is not a common carrier but nevertheless receives compensation for services falls within the higher standard of § 2100. Civil Code

---

[5]The Civil Code itself, as enacted in 1872, declares that "[t]he provisions of this code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments." (§ 5; cf. § 4.)

§ 2100 only distinguishes between common carriers for reward and gratuitous carriers. It does not impose a higher standard of care on all carriers who accept compensation for services." Given the common law rule and its adoption in section 2100, together with its long and consistent application in California, we agree.

This traditional construction of the section equating "carriers for reward" with common carriers was recently applied, though not expressly articulated as such, by the California Supreme Court in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780 [221 Cal.Rptr. 840, 710 P.2d 907]. "Civil Code section 2100 provides: 'A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill.' The duty imposed by section 2100 applies to public [sector] carriers as well as private [sector] carriers and requires them to do all that human care, vigilance, and foresight reasonably can do under the circumstances. *Common carriers* are not, however, insurers of their passengers' safety. Rather, the degree of care and diligence which they must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of the business of the carrier." (*Id.* at p. 785 [italics added, citations & fn. omitted].)

The plaintiff cites four cases in her support. None is controlling.

*Lopez* involved "a public corporation engaged as a common carrier" (40 Cal. 3d at p. 784), and thus is not instructive on the question of a private noncommon carrier for reward. The plaintiff, perhaps, has been confused by the court's mention of "private carriers"—in the sense of *nongovernmental* common carriers—in its rejection of the defendant's position that common carrier duties should not be applied to a governmental common carrier. (*Id.* at pp. 785-791.) But as we have noted, the court's statement of its holding should resolve any question regarding its meaning: "section 2100 imposes upon all *common* carriers—public or private—a duty of utmost care and diligence to protect their passengers from assaults by fellow passengers." (*Id.* at p. 791 [italics supplied].)

*Rogoff* v. *Grabowski* (1988) 200 Cal.App.3d 624 [246 Cal.Rptr. 185], involved a rented limousine with a driver who deserted the plaintiff and retained his personal property. (*Id.* at p. 627.) The principal issue in the case was "whether the breach of the covenant of good faith and fair dealing in a contract for the rental of a limousine gives rise to an action in tort." (*Id.* at p. 626.) At the tail end of the opinion, the court stated, "It is also a reasonable inference from the pleadings that respondent is a carrier of

persons for reward, and perhaps may also be a charter-party carrier of passengers. (See Pub. Util. Code, § 5360.) Therefore, appellant has a statutory cause of action against respondent based on . . . section 2100, and also may have remedies under Public Utilities Code sections 5382 and 2106." (*Id.* at pp. 633-634.) The opinion, however, did not address—much less resolve—the question of whether the limousine service was a common carrier. The passing remark of the court cannot reasonably be understood to impose the "utmost care" standard of section 2100 upon a private carrier of passengers for reward.

*McIntyre* v. *Smoke Tree Ranch Stables* (1962) 205 Cal.App.2d 489 [23 Cal.Rptr. 339] at least has a factual similarity to the present case, involving guided mule train tours over a scenic route. (*Id.* at p. 490.) The plaintiff, who paid his $2.50, was injured when Jezebel the mule fell. (*Id.* at p. 491.) The trial court refused to instruct whether the pack train facility was a *common carrier* (*ibid.*); the reviewing court held this was error (*id.* at p. 494). There is no discussion of a duty of care premised on a status of a private carrier for reward. Section 2100 is discussed only in connection with a common carrier's duty of care. (205 Cal.App.2d at p. 492.) Indeed, the link between the duty imposed by section 2100 and a common carrier is explicitly made. "The provisions of sections 2168 and 2100 of the Civil Code are pertinent to the issue at hand; the first thereof provides that: 'Every one who offers to the public to carry persons . . . is a common carrier . . .'; and the second thereof directs that: 'A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill.'" (205 Cal.App.2d. at p. 492.)

Finally, *Kohl* v. *Disneyland, Inc.* (1962) 201 Cal.App.2d 780 [20 Cal.Rptr. 367] involved plaintiffs injured when the horses drawing "The Surrey with the Fringe on Top" ride became frightened and bolted, causing the shiny little vehicle to tip over. (*Id.* at p. 782.) The court, in the course of discussing res ipsa loquitur principles, simply described the relationship as "passenger-carrier" in defining the duty of care between the parties. The case, however, concerns the sufficiency of the evidence to support a finding that there was no negligence and does not involve itself with defining the relationship of the parties; it is simply a given that section 2100 applies. As cases are not authority for propositions not expressly considered in them (*State of California* ex. rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1205, fn. 11 [252 Cal.Rptr. 221, 762 P.2d 385]), this case provides no succor for the instant plaintiff.

The short answer to plaintiff's contention is found in *Carpena* v. *County of Los Angeles* (1960) 183 Cal.App.2d 541 [7 Cal.Rptr. 889]. "It is plaintiff's

contention that defendant had the duty to exercise the utmost care in transporting plaintiff even though defendant is not a common carrier and at the time of the accident defendant was acting in a governmental capacity. Two cases are cited by plaintiff in support of this contention but each is a case involving a common carrier, one being a city transit bus and the other a railroad train, and neither affords assistance to him. It appears in this case that defendant was at the most acting as a private carrier and certainly was required to exercise no more than ordinary care and prudence." (*Id.* at pp. 543-544 [citations omitted].)

Since the standard of care for a private carrier for reward is ordinary negligence, the plaintiff was not entitled to her requested instructional modifications. Nor was she prejudiced either by a form of verdict which indicated (as she states) that "there could be no liability under . . . section 2100 if defendant were determined not to be a common carrier or, in other words, a private carrier," or by the jury's special verdict concluding the defendant was not a carrier for reward, since even if the defendant were a private carrier for reward, only ordinary negligence principles would apply.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Sims, J., concurred.