Mary LANZ and The Economy
Companies, Appellants,

v.

Carvel PEARSON, Leslie Richter,
Damon Hickman and Ida
Hickman, Appellees,

No. 89–1532.

Supreme Court of Iowa.

Sept. 18, 1991.

Joseph L. Fitzgibbons of the Fitzgibbons
Brothers, Estherville, for appellees Pear-
son and Richter.

Fred L. Morris of Peddicord, Wharton,
Thune, Foxhoven & Spencer, P.C., Des
Moines, for appellees Hickman.

Fredd J. Haas of Humphrey & Haas,
P.C., Des Moines, for appellants.

Considered by McGIVERIN, C.J., and
LARSON, CARTER, SNELL and
ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Plaintiffs Mary Lanz and The Economy Companies (Economy) appeal from jury verdict and judgment finding defendants Carvel Pearson, Leslie Richter, Damon Hickman and Ida Hickman not at fault for damages incurred by plaintiffs resulting from a three-car accident. Plaintiffs contend the district court erred in instructing the jury on the act of God defense and in preventing them from cross-examining Pearson regarding a statement he made to his insurance investigator.

Defendants Pearson and Richter cross-appealed, claiming the district court erred in instructing the jury that the negligence of a consent driver of a motor vehicle is not imputable to the owner.

We, now, affirm the district court's rulings on the cross-examination and imputation of negligence issues, but reverse the court's decision to give an act of God defense instruction. Accordingly, we remand for a new trial.

I. *Background facts and proceedings.* From the evidence presented at trial, a jury could have found the following facts. In the pre-dawn hours of January 29, 1985, Lanz and her co-employee Jolene Leconte departed from Cherokee, in separate automobiles, heading toward Spencer. The automobile driven by Lanz was owned by Economy.

Leconte led the way and Lanz followed her. Snow was falling and the roads were at least partially snow covered. The trip was uneventful until, at approximately 6:30 a.m. while heading north on highway 71, the automobile driven by Lanz collided with a southbound vehicle driven by Pearson and owned by Richter. After the initial collision between Lanz and Pearson, a vehicle driven by Damon Hickman and owned by Ida Hickman struck the car driven by Lanz.

Lanz sued the owners and drivers of the other two vehicles involved in the accident for negligence to recover compensation for her personal injury damages. Economy sued the same defendants for property damage to its automobile. Defendants asserted the affirmative defense that the ac-

cident was caused by an act of God. The two actions were consolidated for trial.

After trial, the jury returned verdicts, in both cases, in favor of defendants. Plaintiffs appealed, challenging two district court rulings.

Plaintiffs contend the district court erred in instructing the jury on the defense of act of God. Plaintiffs also argue that the court erred in sustaining defendants' objection to plaintiffs' cross-examination of Pearson concerning a statement he made to an investigator of his insurance company shortly after the accident.

Defendants Pearson and Richter cross-appealed, claiming the district court erred in instructing the jury that any negligence of Lanz, a consent driver of a motor vehicle, is not imputable to Economy, the owner.

We transferred the case to our court of appeals. That court affirmed the district court's ruling on the imputation of negligence issue but reversed the district court's rulings on the act of God instruction and on the cross-examination issue.

On further review, we vacate the decision of the court of appeals and affirm the district court's rulings on the cross-examination and imputation of negligence issues, but reverse the district court's decision to give an act of God instruction.

██ II. *Act of God instruction.* At trial, evidence was presented that, on the morning of the accident giving rise to this lawsuit, highway 71 was icy and snow covered. The center line was obscured and the road surface was slippery. Visibility was reduced by darkness, falling snow, and billowing snow kicked up by vehicles. Based on that evidence, the district court instructed the jury, in instructions 29–32, that defendants claimed the sole proximate cause of plaintiffs' damages was an act of God. Instruction 32A defined act of God as "such an unusual and extraordinary display of nature that it could not be expected under normal conditions."

Plaintiffs contend on appeal that there was not substantial evidence to support an

act of God instruction. *See Ahrens v. Ahrens*, 386 N.W.2d 536, 539 (Iowa App.1986) (parties have a right to have their legal theories submitted to the jury only if they are supported by the pleadings and substantial evidence). In determining whether a jury question is raised, we must view the evidence in the light most favorable to the party requesting the instructions. *Lake v. Schaffnit*, 406 N.W.2d 437, 439 (Iowa 1987). If reasonable minds might draw different inferences from the evidence, a jury question is engendered. *Id.*

The act of God defense "is founded upon reason and justice that one should not be held responsible for that which he could not have reasonably anticipated, and could not have taken reasonable precautions to guard against." *Oakes v. Peter Pan Bakers, Inc.*, 258 Iowa 447, 454, 138 N.W.2d 93, 98 (1965).

In *Oakes*, we described acts of God in the following manner:

[A]n act of God, as the term is known to the law, is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected. However, the occurrence need not be unprecedented.... If it could not have been anticipated or expected under normal conditions, that is sufficient.

The question of precedent, therefore, relates to the matter of reasonable anticipation and opportunity to avert the consequences, and it is in that sense that the term "unprecedented" is used with regard to the nature of the catastrophe.

*Id.* at 454–55, 138 N.W.2d at 98.

■ *Oakes* identifies three requirements which must be established by substantial evidence before an act of God instruction is proper. First, acts of God are limited to forces of nature. *Id.* Second, the occurrence must be unusual or extraordinary. *Id.* Third, the occurrence must be such that under normal conditions it could not have been anticipated or expected. *Id.* An additional requirement in comparative fault cases is that the act of God defense may be used only when an act of God is alleged to be the sole proximate cause of

the harm in question. *See Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 641–42 (Iowa 1988) (since "act of God" is not a "party" as defined in Iowa Code section 668.2, acts of God may not be assigned a percentage of fault in cases arising under the act; act of God defense may only be used if it is alleged to be the sole proximate cause of the harm in question).

■ We also note that parties, such as defendants, relying on an act of God as a defense in a negligence case have the burden to plead and come forward with proof of its occurrence and that it was the sole proximate cause of the injury. *Naxera v. Wathan*, 159 N.W.2d 513, 517 (Iowa 1968).

We, now, turn to the question of whether substantial evidence was presented to satisfy each requirement necessary for the submission of an act of God instruction. After having viewed the evidence in the light most favorable to the defendants, we conclude, without considering other requirements, that there was no substantial evidence introduced to establish that the conditions on the morning of the accident could not have been anticipated or expected.

Pearson and Damon Hickman not only could have ' anticipated and expected the inclement weather on the morning of the accident, they both testified that they were aware, prior to the accident, that it was snowing, it was dark, visibility was reduced, and the road was slippery. Both also testified that they were on their way to work in Storm Lake and had traveled over highway 71 under similar conditions in the past. These factors distinguish this case from *Oakes*, in which we approved of the act of God instruction.

In *Oakes*, a series of rear-end collisions occurred when, without warning, several vehicles entered a block long area of near zero visibility due to blowing and swirling snow. 258 Iowa at 455, 138 N.W.2d at 98–99. We concluded, in *Oakes*, that the act of God instruction was proper for the jury because the evidence "would permit a finding the blizzard, under the circumstances shown at the time and place, was an ex-

traordinary manifestation of nature not reasonably to be anticipated." *Id.* at 455, 138 N.W.2d at 98. *See also Dickman v. Truck Transport, Inc.,* 224 N.W.2d 459, 462 (Iowa 1974) (plaintiffs did not object to giving of act of God instruction where all witnesses agreed that although they knew a storm was brewing, the dust storm came up suddenly with no forewarning and obliterated visibility).

In the present case, Pearson and Hickman had notice of the inclement weather conditions in adequate time to have taken appropriate precautions, including not traveling during the storm, that would have prevented the collision with Lanz from occurring. Rather than doing so, they both chose to travel on highway 71 in less than ideal weather conditions. Having consciously decided to travel under these conditions, Pearson and Hickman cannot now argue that the weather was the sole cause of the accident.

Other jurisdictions faced with evaluating similar weather conditions have reached the same result we reach today. In *Maanum v. Aust,* 364 N.W.2d 827 (Minn.Ct. App.1985), two trucks were traveling south with one truck three car lengths in front of the other. *Id.* at 830. The trucks entered a sheltered area of the highway, where about six to eight inches of snow had accumulated. *Id.* at 829–30. Meanwhile, a car traveling north entered the same sheltered area. *Id.* A collision occurred between the northbound car and the southbound truck driving behind his companion. *Id.* The driver of the car sued and prevailed over both truck drivers.

On appeal, the defendants argued that an act of God instruction should have been given because the swirling snow produced by the lead truck, when it entered the sheltered area, was a condition of wind and snow attributable to nature. *Id.* at 832. In rejecting the argument that an act of God instruction should have been given, the Minnesota court of appeals relied on the fact that both defendants were aware of the road conditions and could have taken appropriate avoidance measures. *Id.*

The Nebraska supreme court similarly concluded that an act of God instruction was not proper when an accident resulted from vehicles losing control on an icy bridge. *Maloney v. Kaminski,* 220 Neb. 55, 57, 368 N.W.2d 447, 452 (1985). The court stated that because the drivers knew it was misting or raining, that it was getting colder, and that bridges often become icy before the rest of the highway, coming upon an icy bridge is clearly not a manifestation of nature so unusual and extraordinary that it could not under normal conditions have been reasonably anticipated or expected. *Id.* at 66, 368 N.W.2d at 456. Thus, the court ruled that an act of God instruction appropriately was not given. *See also Arnold v. Frigid Food Express Co.,* 9 Ariz.App. 472, 474–75, 453 P.2d 983, 985–86 (1969) (trial court committed reversible error in giving an act of God instruction where accident occurred during dust storm; evidence did not establish that accident happened without negligence); *Oakes v. Mannigan,* 107 Misc.2d 926, 927, 436 N.Y.S.2d 165, 166 (1981) (zero visibility blizzard conditions do not meet act of God criteria that conditions are unprecedented, extraordinary natural conditions which could not be foreseen or avoided).

Because no substantial evidence was introduced to support an act of God instruction, it was reversible error for the trial court to give such instruction.

Because they may arise on retrial, however, we will briefly consider the other issues raised in this case.

III. *Cross-examination of defendant Pearson.* Plaintiffs raise three assignments of error concerning their cross-examination of defendant Pearson.

A. At trial, plaintiffs sought to question defendant Pearson concerning a statement he allegedly made to an investigator of his insurer shortly after the accident. Plaintiffs first contend, on appeal, that they should have been able to ask Pearson if he made any statements about the accident. The record reflects, however, that the trial judge was willing to allow plaintiffs that much latitude in questioning. Plaintiffs, therefore, may not now complain that the

district court erred in its ruling because the court agreed to allow the question that plaintiffs claim they were denied the opportunity to ask.

■ B. Plaintiffs also contend that they should have been allowed to cross-examine Pearson concerning the existence of his statement for impeachment purposes. Although a plaintiff is allowed to cross-examine a defendant about prior statements for impeachment purposes, these purposes could not have been fulfilled here because plaintiffs had never obtained the prior statement before trial. More specifically, during the course of discovery, after plaintiff interposed an interrogatory seeking prior statements made to any persons, Pearson responded that any statements he had given would not be discoverable under Iowa Rule of Civil Procedure 122(c) because they were given in anticipation of litigation. Rule 122(c) provides in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision "a" of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In further support of the response to plaintiffs' interrogatory, Pearson relied on *Ashmead v. Harris*, 336 N.W.2d 197, 201 (Iowa 1983), which holds that the routine investigation of an automobile accident by a liability insurer is conducted in anticipation of litigation within the meaning of rule 122(c). According to *Ashmead*, the statement given by Pearson to his insurance company was prepared in anticipation of litigation, and thus was not discoverable pursuant to rule 122(c) absent a showing by plaintiffs of substantial need.

In the present case, the plaintiffs made no showing of substantial need and made no other effort to obtain Pearson's statement during the discovery stage of the case. Instead, plaintiffs sought to obtain the statement through cross-examination of Pearson at trial. The district court in its discretion under the present record, however, properly refused to allow plaintiffs to engage in discovery during trial. *See id.* at 199 (trial court has wide discretion in ruling on the discoverable nature of requested information).

■ C. Finally, plaintiffs contend that they should have been allowed to obtain and use Pearson's prior statement to refresh his recollection.

■ Witnesses ordinarily should not be allowed to use a memory refresher until it appears that the witness is unable to testify without it. *U.S. Homes, Inc. v. Yates*, 174 N.W.2d 402, 405 (Iowa 1970). In the present case, before plaintiffs could refresh Pearson's memory, they were required to establish that Pearson was unable to testify concerning the details of the collision without first having his memory refreshed. This plaintiffs did not do. Thus, even assuming that Pearson's statement made to his insurance adjuster could be used to refresh his recollection of the accident, there was no necessity justifying its use for that purpose shown here.

Under the present record, the district court did not err in refusing to allow plaintiffs to obtain and use Pearson's statement, made to an investigator of his insurance company, to refresh his memory.

■ IV. *Pilgrim doctrine.* Defendants Pearson and Richter objected to instruction 15, which stated:

> When you consider the Economy Companies' claim for damages to their motor vehicle, you will not charge the Economy Companies with the fault of plaintiff Mary Lanz and I will not reduce the amount of damages awarded to them by the percentage of her fault.

Pearson and Richter also objected to instruction 14 insofar as it stated that, "[a]ny fault assigned to plaintiff Mary Lanz, will

not reduce the recovery awarded to the Economy Companies."

On cross-appeal, Pearson and Richter contend it was error to instruct the jury that the negligence of Lanz, a consent driver of a motor vehicle, is not imputable to Economy, the owner.

In *Stuart v. Pilgrim*, 247 Iowa 709, 74 N.W.2d 212 (1956), this court held that the contributory negligence of the consent driver of a motor vehicle was not imputable to the owner as a matter of law. *Cf. Phillips v. Foster*, 252 Iowa 1075, 109 N.W.2d 604 (1961) (where owner is present in his motor vehicle driven by another, owner is presumed to have the right to control its operation and thus may be chargeable with the driver's contributory negligence). Defendants state, although they offer no reasoning in support of their assertion, that this rule, known as the *Pilgrim* doctrine, was abrogated by the adoption of comparative fault under Iowa Code chapter 668 (1985), and that we should formally abolish it.

We have reviewed our holding in *Pilgrim* and believe that it was not abrogated by and does not conflict with Iowa's comparative fault statute. *See* Iowa Code ch. 668. Indeed, the holding in *Pilgrim* was based on a construction of Iowa's financial responsibility statute, which in 1956 provided that "[i]n all cases where damage is done by any car by reason of negligence of the driver, and driven with the consent of the owner, the owner of the car shall be liable for such damage." *Pilgrim*, 247 Iowa at 711–12, 74 N.W.2d at 214 (citing Iowa Code § 321.493 (1954)). In holding as it did, the *Pilgrim* court reasoned as follows:

> The statute [section 321.493] says this, and this only: that when damage is done by any car by reason of the negligence of a consent driver, "the owner of the car shall be liable for such damage." It applies only when damage has been done by the car, and only to such damage. We have by our decision in [*Secured Finance Co. v. Chicago, R.I. & P.R. Co.*, 207 Iowa 1105, 224 N.W. 88 (1929)] ... read into the act something which is not there; that in addition to being liable for damage caused by the negligent driver of his car, the owner is also bound by the contributory negligence of such driver if he attempts to recover for injuries to his car or to his person through the negligence of a third party. The statute does not so say....

*Id.* at 715, 74 N.W.2d at 216.

If we were to now overrule *Pilgrim* and allow the imputation of a consent driver's comparative fault to the owner of the vehicle, we would again be reading "into the act something which is not there;" i.e., that in addition to being liable for damage caused by the negligent driver of his car, the owner also would be bound by the comparative fault of such driver if he attempts to recover for injuries to his car or to his person due to the negligence of a third party. For this reason, we decline to abolish the *Pilgrim* doctrine.

As to the contention urged on cross-appeal, we conclude the district court did not err on this issue. We make no ruling on other objections, including the employer-employee exception to the *Pilgrim* doctrine made in the trial court, concerning the giving of these instructions that are not urged on the cross-appeal.

V. *Disposition.* We vacate the court of appeals decision. Because the district court erred when it instructed the jury on the act of God defense, we reverse and remand this case for retrial.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.