Mary Jo WRIGHT, Gary J. Wright, and Daniel J. Wright and Debra A. Wright, Through Gary J. Wright, Their Parent and Next Friend, Appellants,

v.

**MIDWEST OLD SETTLERS AND THRESHERS ASSOCIATION and Gary Van Gilst, Appellees,**

and

**Midwest Central Railroad, Defendant.**

No. 95–1562.

Supreme Court of Iowa.

Dec. 18, 1996.

---

Kermit L. Dunahoo of the Dunahoo Law Firm, Des Moines, for appellants.

John D. Stonebraker of McDonald, Stonebraker & Cepican, P.C., Davenport, for appellees.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

PER CURIAM.

At issue in the present case is whether a train operated by the defendants, Midwest Old Settlers and Threshers Association (association) and Gary Van Gilst, comes within the definition of a common carrier, thereby justifying an instruction in a personal injury action on the higher standard of care attributable to a common carrier. The plaintiffs, Mary Jo and Gary Wright and their two minor children, maintain that the train the association operated is a common carrier and therefore subject to a higher degree of care to others. We disagree and affirm.

On September 1, 1991, Mary Jo Wright was injured while alighting from a passenger train at the annual Midwest Old Thresher's reunion. The five-day event is run by the association, a nonprofit organization. It is open to the public for an admission fee. For

an additional fee attendees may ride around the fenced-in grounds of the event on the train in which Wright was injured. Activities at the reunion included museum programs, educational programs, viewing equipment and musical performances.

The "train" had two open cars each with three six-foot-long seats. It was pulled by a small tractor driven by volunteers. Riding the train allowed passengers to see the grounds as well as to be transported from one area to another. Wright allegedly injured herself when the train suddenly began to move while she was attempting to exit one of the cars.

Wright, her husband, Gary, and their two children sued the association, Midwest Central Railroad, the owner of the train, and Gary Van Gilst, the operator, alleging they operated the train in an unsafe and negligent manner. The Wrights specifically alleged the association failed to provide sufficient people to operate the train safely, allowed the train to move before all passengers had gotten off safely, and failed to provide adequate lighting. Following trial, the district court, in its instructions to the jury, declined to submit an instruction on the liability of a common carrier. Instead, the district court submitted the following instruction:

"Negligence" means failure to use ordinary care. Ordinary care is the care which a reasonably careful person would use under similar circumstances. "Negligence" is doing something a reasonably careful person would not do under similar circumstances, or failing to do something a reasonably careful person would do under similar circumstances.

The jury returned a verdict in favor of the defendants. The Wrights appeal.

■ Whenever a proffered jury instruction is rejected, the reviewing court's scope of review is for the correction of errors at law. *Tappe v. Iowa Methodist Med. Ctr.*, 477 N.W.2d 396, 398 (Iowa 1991). In determining whether a jury question was raised, the court must view the evidence in the light most favorable to the party requesting the instruction. *Lanz v. Pearson*, 475 N.W.2d 601, 603 (Iowa 1991). Where reasonable minds might draw different conclusions from

the evidence, a jury question is engendered. *Id.*

The Wrights argue the district court erred in refusing to submit a jury instruction on the liability of a common carrier. The Wrights maintain that although the association did not run the train exclusively for the purpose of transporting the general public, the train nevertheless was a common carrier and the association should be held to a higher degree of care to be exercised in the operation of the train. We conclude that the train operated by the association does not fit within the definition of a common carrier, and that the district court was correct in refusing to instruct on the high degree of care owed by a common carrier.

■ Iowa law adheres to a common law test for determining whether a particular conveyance is a common carrier or private carrier. *State ex rel. Bd. of R.R. Comm'rs v. Rosenstein*, 217 Iowa 985, 989, 252 N.W. 251, 253 (1934).

It is a question of law for the court to determine what constitutes a common carrier, but it is a question of fact whether, under the evidence in a particular case, one charged as a common carrier comes within the definition of that term and is carrying on its business in that capacity.

*Id.* The question of fact to be determined is whether the defendant was engaged in public transportation; if so, the operator of the vehicle was a common carrier. *Id.*

■ Iowa law has defined a common carrier as "one who undertakes to transport, indiscriminately, persons and property for hire." *Employers Mut. Cas. Co. v. Chicago & North Western Transp. Co.*, 521 N.W.2d 692, 693 (Iowa 1994). We have ruled that the distinctive characteristic of a common carrier is that it holds itself out as ready to engage in the transportation of goods or persons for hire, as public employment, and not as a casual occupation. *Kvalheim v. Horace Mann Life Ins. Co.*, 219 N.W.2d 533, 535 (Iowa 1974). A common carrier holds itself out to the public as a carrier of all goods and persons for hire. We, however, have also recognized that a common carrier need not serve all the public all the time. *Id.*

A common carrier may combine its transportation function with other vocations and still be considered a common carrier. *Id.* at 538.

A common carrier must generally exercise more than ordinary diligence for its passengers' protection. *Rozmajzl v. Northland Greyhound Lines,* 242 Iowa 1135, 1139, 49 N.W.2d 501, 502 (1951). A common carrier's duty stops just short of ensuring its passengers' safety. *Id.* "A common carrier is bound to protect its passengers as far as human care and foresight will go and is liable for slight negligence." *Id.* A high degree of care must be exercised in foreseeing, as well as guarding against, danger. *Murray v. Cedar Rapids City Lines, Inc.,* 242 Iowa 794, 800, 48 N.W.2d 256, 260 (1951).

In the present case, the association's event is limited in scope and duration to only a few days each year. Its main business is not to transport all people from one area to another, but rather to entertain those who have paid a fee to attend. Patrons are ferried around the area by a train for which they have paid an additional fee. The purpose of this train is not only to provide transportation around the grounds, but also to entertain the public. Only those who have paid the additional fee may use the train. The association does not hold itself out to the public as being in the business of carrying passengers for hire.

A number of other jurisdictions have considered factual situations similar to the one here. In *Bregel v. Busch Entertainment Corp.,* 248 Va. 175, 444 S.E.2d 718 (1994), the plaintiff filed an action against Busch Entertainment, the owner of a monocable gondola ride at Busch Gardens, after she sustained injuries on the ride. During the trial, the plaintiff offered an instruction that would have informed the jury that Busch Entertainment is a common carrier. *Id.* 444 S.E.2d at 719. The district court declined to give the instruction and instead instructed the jury that Busch was required to exercise reasonable care for the passenger's safety. *Id.* The Virginia Supreme Court ruled that Busch was not a common carrier, and that the gondola ride was not offered for transportation purposes but for entertainment. *Id.* The court emphasized the fact that any

transportation function of the ride was purely incidental to the amusement function. *Id.* at 720.

In *Gunther v. Smith,* 78 Md.App. 508, 553 A.2d 1314, 1316 (1989), the plaintiff was injured after he was thrown from a wagon during a hayride. The plaintiff claimed the defendants, as owners and operators of the wagon, were common carriers and owed a heightened duty of care for their safety. *Id.* The Maryland Court of Special Appeals, however, ruled that the defendants offered the ride for the entertainment of persons attending a private party on private premises and were therefore not common carriers. *Id.; see also Pessl v. Bridger Bowl,* 164 Mont. 389, 524 P.2d 1101 (1974) (ski lift operator not a common carrier and therefore expected to exercise ordinary care); *but see Summit County Dev. Corp. v. Bagnoli,* 166 Colo. 27, 441 P.2d 658 (1968) (holding that ski lift operator was a common carrier and assigned to exercise the highest degree of care).

In *Lamb v. B & B Amusements Corp.,* 869 P.2d 926 (Utah 1993), the plaintiff sued the owner of an amusement park after she was injured while riding a roller coaster. The Utah Supreme Court ruled that the amusement park operator was not a common carrier because patrons of his business expected entertainment and did not have the expectation of being transported safely and securely. *Id.* at 930. The court ruled that "the care required of amusement ride operators is the care that reasonably prudent persons would exercise under the circumstances." *Id.* at 931.

Finally, in *Webster v. Ebright,* 3 Cal. App.4th 784, 4 Cal.Rptr.2d 714 (1992), the plaintiff sued the owner of a horse stable after she sustained injuries while riding a rented horse. The plaintiff alleged the owner of the stable was a common carrier. 4 Cal.Rptr.2d at 715. The California Court of Appeals ruled that the owner of the horse was not a common carrier and was expected to exercise no more than ordinary care and prudence. 4 Cal.Rptr.2d at 720.

We conclude from our review of the above authorities and our own analysis of the issue that where a person or organization

undertakes to conduct an event for a limited period of time and provides a mode of transportation in and around this event for the amusement and comfort of the attendees, that person or organization will not be considered a common carrier subject to the highest degree of care in the operation of the service or facility. *See Foust v. Kinley,* 254 Iowa 690, 117 N.W.2d 843 (1962) (holding the proprietor of a place of public amusement subject to the exercise of ordinary and reasonable care). Because we find that this was the nature of the defendants' activities, plaintiffs were not entitled to an instruction on a higher standard of care. The district court did not err in refusing to instruct the jury on the duty of a common carrier. The district court's judgment is affirmed.

**AFFIRMED.**